IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAREK RADON, | ) |
| | ) |
| Plaintiff, | ) No. 05 C 5811 |
| | ) |
| v. | ) Judge Ronald A. Guzmán |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Marek Radon ("Radon") has appealed the denial of his claim for supplemental security income and disability insurance benefits. Before the Court are the parties' cross-motions for summary judgment. For the reasons provided in this Memorandum Opinion and Order, the Court denies plaintiff's motion, grants defendant's motion and terminates this case.

### Procedural History

On July 8, 2003, Radon applied for social security income ("SSI") and disability insurance benefits, alleging he was disabled as of November 14, 1997. (R. at 57.) Radon's claim was partially denied initially and on reconsideration. (*Id.* at 5, 20-22.) On April 7, 2005, Administrative Law Judge ("ALJ") John K. Kraybill found that prior to July 1, 2003, Radon was not under a "disability," as defined under the Social Security Act, and thus he was not entitled to SSI prior to that date. (*Id.* at 20-22.) However, the ALJ's decision was partially favorable to Radon, finding that Radon was disabled after July 1, 2003, and awarding SSI benefits after that date. (*Id.* at 20.) Finally, the ALJ determined that Radon's disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, had lapsed in December 31, 2002, and thus, Radon was not entitled to receive any disability insurance

benefits. (*Id.*) On August 5, 2005, the Appeals Council concluded that there was no basis under the Social Security Administration regulations for granting Radon's request for review of the ALJ's decision. (*Id.* at 5.) Therefore, the ALJ's decision stands as the final decision of the Commissioner of Social Security. (*Id*; *see* 20 C.F.R. § 416.1481.) On October 7, 2005, Radon brought the instant action.

## Facts

At the time of the administrative hearing, Radon was a forty-nine-year-old male. (R. at 57.) Radon has one daughter, aged over eighteen years old at time of Radon's application. (*Id.*) On his disability application, Radon has stated that he was married for over twenty-five years to Krystyna Radon (*id.*), although Radon and his wife have since separated. (*Id.* at 237.) Radon is sixty-seven inches tall and weighs 182 pounds. (*Id.* at 72.)

Radon's alleged disability stems largely from a work injury on November 13, 1997, in which Radon injured his back while employed as an asbestos remover. (*Id.* at 158.) Radon was dismantling a pipe at work when the injury occurred. (*Id.*) Since that time, Radon has been unemployed, with the exception of a brief return to work in 1999, at which time Radon re-injured his back. (*Id.*) In February 2000, Radon had surgery for a herniated spinal disc and then attended four weeks of work-hardening therapy. (*Id.*) On November 14, 2001, Radon underwent an evaluation by Ergos Work Recovery, Inc. (in conjunction with St. Mary's Clinic) (*id.*), which determined that Radon could not engage in heavy or medium work, but that he met all the requirements for light and sedentary work (*id.* at 160-63). As a result of the evaluation, Radon was capable of "return[ing] to the work force at the [Department of Labor's designated] 'light' level." (*Id.* at 161.)

In July 2003, Radon met with Dr. Augustyn Stec, a specialist in neurology, who opined that Radon was suffering from a variety of symptoms and thus "not a candidate for rehabilitation . . . [Radon] is totally disabled to gainful employment and his disability is permanent." (*Id.* at 138.) On September 8, 2003, Radon underwent a psychiatric evaluation by Dr. S.J. Puszkarski, who diagnosed Radon as suffering from "major depressive disorder, single episode severe." (*Id.* at 238.) Seven days later, on September 15, 2003, Radon underwent an evaluation by internist Dr. Margaret Stronska, a specialist in primary care orthopedics, who examined Radon in light of his past neck and back history. (*Id.* at 240-53.) Dr. Stronska reported that Radon had "abnormal motion in the neck and lumbar back . . . normal reflexes and sensation in the legs . . . and uncontrolled hypertension," likely causing dizziness when walking. (*Id.* at 244.)

On April 7, 2005, the ALJ made the following findings of fact:

1. The claimant concurrently filed Title II and Title XVI claims, dated July 8, 2003, in which he alleged disability beginning on November 14, 1997.
2. The claimant was insured for Title II benefits through the close of December 31, 2002.
3. The claimant is not currently working.
4. The claimant had not engaged in disqualifying substantial gainful activity at any time relevant to this decision.
5. The claimant has medically determinable severe impairments, including post neck and back surgery and major depression.
6. The claimant does not have an impairment[s] which meets or equals any listed impairment in Appendix 1.
7. The claimant was not an entirely credible witness.
8. The claimant retained a maximum residual functional capacity for a full, or wide, range of "light" work before July 1, 2003.
9. The claimant's non-exertional impairments did not erode the occupational base for a full, or wide, range of light work before July 1, 2003.
10. The claimant's impairments prevented him from performing his past relevant heavy work before July 1, 2003.
11. The claimant could make an adjustment to do other work before July 1, 2003, considering the claimant's age, education and work experience, and using, as a framework, rules 202.18, 202.21, of the medical-vocational guidelines; notwithstanding his non-exertional impairments.
12. Beginning July 1, 2003, the claimant's occupational base was significantly eroded by his non-exertional impairments for a significant number of jobs in the economy; notwithstanding his younger age [SSR 96-9p and 85-15].

3

13. The claimant's disability began on July 1, 2003, which continues through at least the date of this decision.
14. The claimant was not entitled to a period of disability insurance benefits under sections 216[i] and 223, of the Act since his [date last insured] was December 31, 2002.
15. The claimant was disabled under section 161[a][3][A], of the Act, based on his SSI claim for supplemental security income, dated July 8, 2003.
16. The claimant is eligible for SSI benefits if he also meets the non-disability requirements of the Act.

(R. at 20-22.)

## Discussion

This Court must uphold the ALJ's decision so long as it is supported by substantial evidence in the record. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). "Evidence is substantial if it is sufficient for a reasonable person to accept as adequate to support the decision." *Id.* (quotations omitted). If reasonable minds could disagree as to whether an individual is disabled, this court must affirm the Secretary's decision. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). In determining whether the ALJ's decision was reasonable, this court must defer to the ALJ's credibility determinations, as an ALJ is in the best position to consider a witness's truthfulness and forthrightness. *Skarbek*, 390 F.3d at 504; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Thus, this court may not reweigh the evidence or reconsider credibility decisions made by the ALJ, unless they are patently wrong. *Skarbek*, 390 F.3d at 503.

The Social Security Act authorizes disability benefits for those who are unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). To determine whether an adult claimant is disabled under the Act, the ALJ must address the following questions in sequential order:

4

(1) is the claimant presently unemployed; (2) is the claimant's impairment or combination of impairments severe; (3) does the impairment meet or exceed any of the list of specific impairments . . . that the Secretary acknowledges to be so severe as to preclude substantial gainful activity; (4) if the impairment has not been listed by the Secretary as conclusively disabling, is the claimant unable to perform his or her former occupation; and (5) if the claimant cannot perform the past occupation, is the claimant unable to perform other work in the national economy in light of his or her age, education and work experience.

*Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); 20 C.F.R. § 416.920(a)-(f). "A negative conclusion at any step (except for step three) precludes a finding of disability." *Young*, 957 F.2d at 389. "An affirmative answer at steps one, two or four leads to the next step. *Id.* "[P]laintiff has the burden of production and persuasion on steps one through four, and the burden shifts to SSA on step five to show ability to engage in some other type of [substantial gainful activity]." *Terry v. Apfel*, No. 97 C 3369, 1998 WL 704322 at *1 (N.D. Ill. Sept. 24, 1998).

First, the ALJ found that he was not presently employed since November 14, 1997, the alleged onset date of disability, notwithstanding the contrary statement of Radon's neighbor, who told Agency investigators that he knew Radon worked because his car was filled with work-related items. (R. at 16.) Second, the ALJ then found that Radon has medically determinable impairments, including low back pain, cervical pain, chest pain and depression, which are "severe." (*Id.* at 16.) Third, however, the ALJ found that Radon did not have an impairment or combination of impairments listed in, or medically equal to, one listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1. (*Id.* at 17.) Fourth, the ALJ found that Radon's impairments prevented him from performing his past relevant heavy work before July 1, 2003. (*Id.* at 21.) Finally, the ALJ determined that Radon had the residual functioning capacity for a full, or wide, range of "light" work before July 1, 2003, but after such date, Radon's occupational base was "significantly eroded by his non-exertional impairments for a significant number of jobs in the economy." (*Id.*

5

at 21.) The ALJ thus determined that Radon's disability began on July 1, 2003, which "continues through at least the date of this decision." (*Id.* at 21.)

Radon argues that the ALJ erred in failing to give Radon's treating physician, Dr. Stec, "controlling" weight in the determination of Radon's disability prior to July 1, 2003. (Radon's Mot. Summ. J. 6). However, the Court disagrees and finds that the ALJ's residual functioning capacity ["RFC"] determination is supported by substantial evidence in the record. The ALJ reasonably found that Dr. Stec's opinion was not entirely credible, and thus his opinion did not warrant a retroactive finding of disability prior to his examination of Radon.

Generally, a treating physician's opinion should be given great weight in disability actions, *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000), as such physicians are usually "familiar with the claimant's impairments, treatments, and responses," *Gilkey v. Barnhart*, 417 F. Supp. 2d 949, 962 (N.D. Ill. 2006). Indeed, Radon's claim that such opinions be given "controlling weight" is accurate, if such an opinion is "well supported by medical findings and not inconsistent with other substantial evidence in the record." *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

However, Dr. Stec's medical opinions are not supported by substantial evidence in the record prior to July 1, 2003, the date as of which the ALJ found Radon to be disabled. Here, the ALJ outlined the medical evidence, including Dr. Stec's diagnosis that Radon was suffering from multiple physical and psychological problems and was thus permanently disabled. (R. at 18, 138.) Dr. Stec's psychological opinion was corroborated by Dr. Puszkarski, who noted that Radon was suffering from major depressive disorder – single episode severe, and was thus disabled. (*Id.* at 238.) However, the ALJ noted that Dr. Stec's opinion of Radon's physical characteristics contrasted somewhat with a medical evaluation of Radon given by Dr. Stronska on September 15, 2003, just two months after Dr. Stec's examination. Dr. Stronska found

6

normal reflexes and sensation in the legs, and some abnormal motion in Radon's neck and lumbar back, but no neuropathy. (*Id.* at 244.) Concerning Radon's psychological depression, Radon himself has admitted that his marital problems have left him feeling "increasingly depressed," a factor which stems from his wife's separation from him in 2003. (*Id.* at 237). All medical examinations previously mentioned occurred in 2003, and there is no evidence that Dr. Stec's diagnosis of Radon's depression should control as to any period before the date of examination, specifically the challenged period of 1997-2003. Under such circumstances, and given other substantial evidence in the record, the ALJ's determination that Dr. Stec's opinion should not be controlling prior to July 1, 2003, should not be disturbed on review.

Furthermore, Dr. Stec's opinions are "internally inconsistent," and the ALJ "articulate[d] his reasons for crediting or rejecting evidence of disability" prior to July 1, 2003. *See Clifford*, 227 F.3d at 870 (quotations omitted). Dr. Stec initially reported that he had treated Radon every one to two months since July 2001. This contrasted with Radon's statement that he had only visited Dr. Stec once on July 1, 2003. (R. at 274.) The inconsistent testimony as to the date(s) of treatment even prompted an investigation for fraud by the Cooperative Disability Investigations Unit ("CDIU"), during which Dr. Stec later changed the date from July 2001 to July 2003. (*Id.* at 108.) Such internal inconsistencies, which are crucial to determining disability amounts in the present case, provided a reasonable basis for the ALJ's conclusion that "if there ever was a sympathetic treating source, whose opinion should not be accorded 'controlling weight,' or even considerable weight, it is Dr. Stec." (*Id.* at 18.)

Further, the ALJ reasonably found that Radon was not an entirely credible witness, given his inconsistent statements and also the Commissioner's presentation of contrary evidence. Radon alleges that his physical and emotional status met the definition of disability after November 14, 1997, the date of injury, to the present date, and thus he is entitled to SSI benefits

7

during the 1997-2003 period, as well as benefits after the ALJ's disability date of July 1, 2003. However, Radon's claim of disability prior to July 1, 2003 is not supported by substantial evidence, other than Radon's own subjective statements. While Radon did receive spinal surgery in 2000 for a herniated disc (*id.* at 158), there is no evidence that subsequent to that surgery, Radon met the definition of a disability. To the contrary, the Commissioner presented evidence that Radon did not meet the disability definition prior to 2003. Radon went through work-hardening therapy and then undertook a Functional Capacity Evaluation on November 14, 2001. (*Id.* at 160-63.) The evaluator, Janet Yoshida, stated that Radon met all the strength level requirements for "light" and "sedentary" work, with the expected outcome being that Radon will "return to the work force at the [Department of Labor's designated] light level." (*Id.* at 161.)

According to the ALJ, Radon's subjective statements about his own purported 'disability' prior to July 1, 2003 do not outweigh Yoshida's evaluation. The ALJ specifically noted that "to say that [Radon] is not entirely credible is an understatement." (*Id.* at 19.) Radon has given conflicting accounts about how the injury has affected his daily activities. Radon has told investigators that he used a cane "all the time" but did not have it with him when he was being interviewed by them. (*Id.* at 273.) However, Radon's neighbors have stated that Radon walks without a cane. (*Id.* at 272-73.) Radon has stated that he has difficulty walking for more than one block, cannot sit down for more than fifteen to thirty minutes at a time, can barely drive, and cannot carry more than a small shopping bag. (*Id.* at 275, 458). However, Radon's neighbors have stated that his car is filled with work-related items and that he is not disabled. (*Id.* at 273.) Radon has stated that he struggled up five steps to his second floor apartment. (*Id.* at 458.) However, investigators noted that from the front entrance of Radon's apartment, there were approximately "20 flights of stairs." (*Id.* at 272.) Several weeks after Radon's injury, he was

even spotted running up "20 steep flights of stairs" of his old employment to fetch his final check. (*Id.* at 271.)

Radon has also given conflicting statements about his non-injury-related qualities. Radon has attained either an eleventh or twelfth grade education in Poland, based on conflicting accounts that Radon has himself given to the government. (*Id.* at 79, 275.) Radon has also given conflicting accounts as to his ability to speak English. On July 8, 2003, Radon stated in his disability application that he could not read English, and cannot write more than his first name in English. (*Id.* at 72.) Radon later stated to an investigatory committee that he could read and write English, and always wrote his own checks to pay bills. (*Id.* at 275.) All of these inconsistencies prompted the ALJ to reasonably conclude that Radon's testimony regarding the extent and duration of his disability was not credible. This Court will not disturb the ALJ's credibility determination based on the record before it.

Finally, Radon claims that he is entitled to disability insurance benefits ("DIB") between 1997-2003, as he asserts that he was insured at the time of disability. In order to receive disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, a claimant must establish that he was disabled on or before the date he was last insured ("DLI"). *Gilkey*, 417 F. Supp. at 961. The ALJ found that Radon's DLI for Title II benefits was December 31, 2002. (*Id.* at 15.) While Radon challenges the ALJ's lack of providing "any basis for his determination," (Radon's Mot. Summ. J. 10), the record indicates that the date Radon was last insured, December 31, 2002, has been consistently reflected over the years in administrative decisions and materials concerning Radon's application for disability benefits. The record shows that the Social Security Administration ("SSA") used that date in its initial July 22, 2003 disability report of Radon's application, (*id.* at 90), and later in its final December 3, 2003 determination of Radon's status, (*id.* at 41, 47). Radon neither explains why such an

9

affirmatively established date is suspect, nor provides any alternative calculation for his DLI. As such, the ALJ's finding that Radon was not entitled to DIB because he was not insured as of the date of disability, *i.e.*, July 1, 2003, is supported by substantial evidence.

As discussed above, there is substantial evidence for the ALJ's finding that Radon's pain did not interfere with his ability to perform light and sedentary work prior to July 1, 2003. Given: (1) Radon's residual functioning capacity to perform light and sedentary work; (2) his age [40-49]; (3) his eleventh or twelfth grade education; and (4) testimony of Radon's physical status by neighbors, coworkers, and evaluators, the ALJ correctly applied the criteria under the Social Security Act to conclude that Radon was not disabled prior to July 1, 2003. Furthermore, Radon is not entitled to DIB because he was not disabled on or before the date he was last insured, December 31, 2002. Thus, the record before this Court provides substantial evidence that is sufficient to affirm the ALJ's final decision.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment [doc. no. 25], denies Radon's motion for summary judgment [doc. no. 24], and hereby terminates this case.

SO ORDERED      ENTERED: 3/9/07

HON. RONALD A. GUZMAN
United States Judge